UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN L. PETEREC,

                         Plaintiff,

        v.

TGI FRIDAYS, INC., *d/b/a* WOW BAO,
TGI FRIDAYS FRANCHISOR, LLC,
DAVID ALVAREZ-TUDARES, RENE M.
MEJIA, *and* JOHN BOGLE,

                         Defendants.

No. 23-CV-8028 (KMK)

OPINION & ORDER

Appearances:

John L. Peterec
New York, NY
*Pro se Plaintiff*

Adam Granek Guttell, Esq.
Jackson Lewis P.C.
Melville, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff John Peterec, proceeding pro se, brings this Action against TGI Fridays

Franchisor, LLC ("Fridays Franchisor"), TGI Fridays, Inc., David Alvarez-Tudares, Rene Mejia,

and John Bogle, (together with Alvarez-Tudares and Mejia, the "Individual Defendants";

collectively "Defendants").  Plaintiff alleges that Defendants discriminated against him,

retaliated against him, and subjected him to a hostile work environment in violation of the Age

Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA") and the New York State

Human Rights Law ("NYSHRL"), New York Executive Law § 296.  (*See generally* Am. Compl.

("FAC") (Dkt. No. 12).)  Before the Court are two motions:  Fridays Franchisor's Motion To

Dismiss pursuant to Rule 12(b)(1) and 12(b)(6), (Not. of Mot. (Dkt. No. 22)), and the Individual

Defendants' Motion To Dismiss pursuant to Rule 12(b)(6), (Not. of Mot. (Dkt. No. 33)).[1]  For

the following reasons, Fridays Franchisor's Motion is granted and the Individual Defendants'

Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

On January 6, 2022, Plaintiff started work as a dishwasher at the TGI Fridays located in

Wallkill, New York.  (FAC ¶ 5.)  At the time, Defendant Alvarez-Tudares was Plaintiff's

immediate supervisor.  (*Id*. ¶ 8.)

Beginning in April 2022, Alvarez-Tudares began directing assistant managers to tell

Plaintiff not to report to work certain days because "the day-shift was slow."  (*Id*. ¶ 9.)

Nevertheless, on the days Plaintiff did report in, his "shifts were concluding later and

consistently so, due to increased business."  (*Id*. ¶ 11.)

In late May, Alvarez-Tudares allegedly "berat[ed]" plaintiff "for no justified reason"

about when his shifts were ending.  (*Id*.)  When Plaintiff "defended [his] record," Alvarez-

Tudares allegedly responded:  "if this keeps up, we are going to have to make some changes.  I

had second thoughts about hiring you because of how old you are, but I wanted to give you a

chance."  (*Id*.)  Plaintiff stated that Alvarez-Tudares did not know his actual age and he asked

Alvarez-Tudares not to "threaten [Plaintiff] with that."  Alvarez-Tudares allegedly responded

that he knew Plaintiff's age from documents copied during the interview process.  (*Id*.)

---

[1] TGI Fridays, Inc. was not served at the same time as the other Defendants.  That entity submitted a waiver of service on August 12, 2024, and the Court granted an extension for its response through November 7, 2024.  (*See* Dkt. No. 48.)

In the weeks after, Plaintiff started receiving calls and texts directing him not to come to work. (*Id.* ¶ 12.) Plaintiff reported to work anyway, which Alvarez-Tudares allowed despite questioning why Plaintiff was there against his instructions. (*Id.* ¶¶ 12–13.)

On June 9, 2022, Alvarez-Tudares called Plaintiff in the afternoon and told him not to come in for his scheduled night shift because "the day-shift was slow." (*Id.* ¶ 14.) Plaintiff said he would come in regardless because his shift had "been consistently busy." (*Id.*). Alvarez-Tudares then responded "I am laying you off, so do not come in." (*Id.*) Later, he followed-up with an email stating "[b]ecause business was slow, I am laying you off, but, when it gets busier, I will contact you to return to work." (*Id.* ¶ 15.)

Afterwards, Plaintiff contacted the TGI Friday's HR department complaining about "what [he] and co-workers felt was an un-just lay-off." (*Id.* ¶ 16.) Plaintiff alleges that he called and left multiple voice messages "explain[ing] in full detail what had happened." (*Id.*)

On July 18, 2022, the TGI Friday's HR department contacted Plaintiff and allegedly offered him his job back. (*Id.*) Plaintiff accepted and began his second term of employment at the Wallkill TGI Fridays on July 19, 2022, working the night shift on Tuesdays and Thursdays. (*Id.* ¶¶ 16–17.)

On September 13, 2022, an unnamed individual directed Plaintiff to go home when he arrived at work. (*Id.* ¶ 17.) Plaintiff contacted HR, and a staff member said that she would speak to the area manager, Defendant John Bogel. (*Id.*) Two days later, Alvarez-Tudares sent Plaintiff home early. (*Id.*) Plaintiff then began to receive "calls in the early afternoon" telling him not to come to work for his assigned shifts, which Plaintiff ignored. (*Id.* ¶ 18.)

At some point, Defendant Mejia took over as Plaintiff's night manager on Thursdays. (*Id.* ¶ 19.) On those days, Plaintiff alleges that Mejia would tell Plaintiff to "step aside and let a

younger guy handle this" and to "[j]ust do the garbage and the floor and swipe out. No more doing dishes for you the rest of the night." (*Id.* ¶ 19.) This type of interaction allegedly occurred six times, on September 29, October 20, October 27, November 10, November 17, and December 8, 2022. (*Id.*) Plaintiff alleges the early leave would cost him "at least [three] hours [of] work [and] pay." (*Id.*)

When Plaintiff reported to work on December 13, 2022, "Dougie"—a night manager with whom Plaintiff allegedly had no issue—told Plaintiff that Mejia instructed Dougie to order Plaintiff to go home. (*Id.* ¶ 20.) Dougie told Plaintiff that he could not "understand why they were doing this to [Plaintiff]," but that he would not get involved. (*Id.*) Mejia then arrived and confronted Plaintiff on his shift. Mejia allegedly screamed: "Yo, Punch out! You're not working tonight even though it's your day. . . . We don't need any dishwasher tonight. It's too slow." (*Id.*) Plaintiff also worked the next day, December 14, 2022, at which time other employees told Plaintiff that business was "really slow" that night. (*Id.* ¶ 21.) And Plaintiff observed the only other assigned dish washer in the back "mopping the floor." (*Id.*) Plaintiff alleges that this other, younger, dishwasher was never sent home early. (*Id.*)

On December 29, 2022, Mejia walked over to Plaintiff's station and said: "You know the drill Johnny, step aside and let a younger guy take over. I'll wash everything the rest of the night. Just do the garbage and floor and swipe out." (*Id.* ¶ 22.) Other days during that timeframe, when Dougie was the manager, Plaintiff would work a full night shift "with no problems." (*Id* ¶ 23.) Again on January 12, 2023, Mejia ordered Plaintiff to leave work early. He allegedly did so despite "a giant crowd" entering the restaurant, leaving "plenty of work still to be done." (*Id.* ¶ 24.)

On January 17, 2023, an unnamed female manager informed Plaintiff that TGI Fridays was removing his Thursday shift, as he worked better with the Tuesday night manager. (*Id.* ¶ 25.) Then, on January 23, 2023, Mejia called Plaintiff and informed him that "[d]ishwasher positions ha[d] been stopped Mondays, Tuesdays, Wednesdays, [and] Thursdays." (*Id.* ¶ 26.) He allegedly also stated "I can't give you any documentation [regarding] the two days you always had scheduled to work, you now lost." (*Id.*) Plaintiff called HR the same day. (*Id.* ¶ 17.) He appears to allege that this series of events resulted in a second termination. (*See id.* ¶ 16 ("I was out of work").)

As relevant to Fridays Franchisor's Motion, Plaintiff makes several references to "TGI Fridays, Franchisor, LLC/Inc." in the FAC. (*See, e.g.*, FAC ¶ 16.) He alleges that those entities are "a [f]ranchise operation with [f]ranchisees owning most of the outlets." (*Id.*) In connection with the FAC, Plaintiff produced two pay stubs from "TGI Fridays, Inc.," in addition to an IRS W-2 Wage and Tax Statement listing "TGI Fridays, Inc." as his employer. (*See* Letter from John L. Peterec to Court (Dec. 7, 2023) ("Pl's Paychecks") (Dkt. No. 13).)[2]

B. Procedural History

Fridays Franchisor requested leave to file its Motion on December 22, 2023. (Dkt. No. 14.) The Court set a briefing schedule in lieu of a pre-motion conference. (Order (Dkt. No. 16.) Pursuant to that schedule, Fridays Franchisor moved to dismiss on February 16, 2024. (Not. of Mot (Dkt. No. 22).; Aff. of Adam G. Guttell in Supp. of Mot. ("Guttell Aff.") (Dkt. No. 23); Decl. of Jennifer Rote in Supp. of Mot. (Dkt. No. 24); Mem. of Law in Supp. ("Franchisor Mem.") (Dkt. No. 25).) Plaintiff filed his Opposition on March 4, 2024. (Pl's Opp.

---

[2] The Court considers these documents as attachments to the FAC. Plaintiff filed these documents on the same day as the FAC and both appear to be designed to remedy deficiencies raised in Fridays Franchisor's initial pre-motion letter. (*See* Dkt. No. 10.)

to Def's Mot. ("Pl's Franchisor Mem.") (Dkt. No. 26).)  Fridays Franchisor replied on April 2,

2024.  (Reply Mem. of Law ("Franchisor Reply") (Dkt. No. 32).)

The Individual Defendants requested leave to file their Motion on March 8, 2024.  (Dkt.

No. 29.)  As before, the Court set a briefing schedule instead of holding a pre-motion conference.

(Order (Dkt. No. 31).)  The Individual Defendants moved to dismiss on April 19, 2024.  (Not of

Mot. (Dkt. No. 33); Mem. of Law in Supp. of Mot. ("Indiv. Defs' Mem.") (Dkt. No. 35).)

Plaintiff filed his Opposition on May 6, 2024.  (Opp. to Defs' Mot. ("Pl's Indiv. Mem.") (Dkt.

No. 38).)  And the Individual Defendants replied on May 31, 2024.  (Reply Mem. of Law

("Indiv. Defs' Reply") (Dkt. No. 41).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

6

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

      "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907,

2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).[3]

B.  Fridays Franchisor's Motion

The Court begins with Fridays Franchisor's Motion.  Fridays Franchisor moves to dismiss, arguing that it was not Plaintiff's employer and therefore not a proper Defendant.  (*See generally* Franchisor Mem.)

As relevant here, the ADEA and NYSHRL impose liability only on employers.  *See* 29 U.S.C. § 623 (ADEA), N.Y. Exec. Law § 296(1) (NYSHRL).  "A covered 'employer,' for purposes of the ADEA, must have 'twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year' preceding the date of

---

[3] Fridays Franchisor also invoked Rule 12(b)(1) but did not raise any jurisdictional issues outside its request for the Court to decline supplemental jurisdiction over certain state law claims.  (*See* Franchisor Mem. 10–11.)  Accordingly, the Court will not consider Fridays Franchisor's extra-pleading material, including the Rote Declaration, (Dkt. No. 24).

the unlawful discrimination." *Chen v. Shanghai Cafe Deluxe, Inc*., No. 17-CV-2536, 2019 WL 1447082, at \*7 (S.D.N.Y. Mar. 8, 2019) (quoting 29 U.S.C. § 630(b)).  While the NYSHRL does not define the term "employer," *see Chau v. Donovan*, 357 F. Supp. 3d 276, 284 (S.D.N.Y. 2019), liability under both statutes also requires "an employer-employee relationship at the time of the alleged unlawful conduct," *DeBernardo v. Lowe's Home Ctrs.*, No. 19-CV-04968, 2022 WL 377962, at \*5 (E.D.N.Y. Feb. 8, 2022) (quoting *Gilani v. Hewlett-Packard Co*., No. 15-CV-5609, 2018 WL 4374002, at \*4 (S.D.N.Y. Sept. 12, 2012)); *see also Nelson v. Argyropoulous*, No. 18-CV-11413, 2020 WL 1244295, at \*2 (S.D.N.Y. Mar. 16, 2020) (discussing ADEA and NYSHRL claims).  To determine if such a relationship exists, courts look to factors including "(1) the selection and engagement of the [employee]; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the [employee's] conduct." *Lora v. Centralized Mgmt. Serv., Inc*., No. 18-CV-4253, 2020 WL 3173025, at \*4 (S.D.N.Y. June 12, 2020) (quotation marks omitted).  "The touchstone of this inquiry is the 'employer's power "to order and control" the employee in his or her performance of work.'" *See id.* (quoting *Griffin v. Sirva*, *Inc.*, 76 N.E.3d 1063, 1069 (N.Y. 2017)).

Liability under these statutes typically does not extend to "other corporate entities" absent exceptional circumstances. *Doheny v. Int'l Bus. Machines, Corp*., --- F. Supp. 3d ---, 2024 WL 382142, at \*15 (S.D.N.Y. Feb. 1, 2024) (discussing circumstances where courts may pierce the corporate veil for purposes of ADEA liability and citing, inter alia, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (noting such exceptional circumstances are "rare")).  One such circumstance arises where two entities are "sufficiently integrated to be treated as a single[] employer." *See Lora*, 2020 WL 3173025, at \*5 (quoting *Brown v. Daikin Am. Inc*., 756 F.3d 219, 226 (2d Cir. 2014)).  The single-employer doctrine turns on four factors: "(1) interrelation

of operations, (2) centralized control of labor relations, (3) common management, and

(4) common ownership or financial control." *Washington v. NYC Madison Ave. Med. P.C.*,

No. 20-CV-3446, 2021 WL 4037518, at *3 (S.D.N.Y. Sept. 3, 2021) (quoting *Cook v.

Arrowsmith Shelburne, Inc*., 69 F.3d 1235, 1240–41 (2d Cir. 1995)).  How those factors shake

out is "generally a question of fact." *Ruiz v. New Avon LLC*, No. 18-CV-9033, 2019 WL

4601847, at *13 (S.D.N.Y. Sept. 22, 2019).  "Nevertheless, the plaintiff 'must do more than

simply state legal conclusions and recite the elements of the "single employer" standard to

survive a motion to dismiss.'" *Juhua Han v. Kuni's Corp*., No. 19-CV-6265, 2020 WL 2614726,

at *8 (S.D.N.Y. May 22, 2020) (quoting *Fried v. LVI Servs., Inc*., No. 10-CV-9308, 2011 WL

2119748, at *5 (S.D.N.Y. May 23, 2011)).

It is clear on the face of the FAC that Plaintiff fails to allege that Fridays Franchisor is an

"employer" under either statute.

Frist, Plaintiff does not allege facts to satisfy the ADEA's twenty-or-more-employee

threshold.  (*See generally* FAC.)  Given Plaintiff's pro se status, the Court looked to see if the

threshold size requirement could be satisfied with judicially noticeable information.  *See

Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 347 (S.D.N.Y. 2014)

(adopting report and recommendation in pro se case taking judicial notice of information on

employer's website to satisfy Title VII's analogous employer-size requirement).  But it is not

apparent that Fridays Franchisor has twenty, or even any employees at all.[4]  This requirement,

---

[4] Although not fully legible, Plaintiff attaches printouts from what appears to be Zippia.com to his opposition papers with the statement that "TGI Fridays corporate office . . . has 8,994 employees."  (Pl's Franchisor Mem. 6 (citing *id*., Exs. 4, 5).)  Even if this information was judicially noticeable—and it is not clear that it is—the printouts do not establish which of the multiple TGI Fridays entities in this Action qualify as an "employer" under the ADEA.  *See Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 169 (S.D.N.Y. 2014) (noting that, while courts frequently take notice of a *party's* website, they do so "for the *fact* of the website's

albeit formalistic, is "an element of a claim under the ADEA." *See Downey v. Adloox Inc*., 238

F. Supp. 3d 514, 524 (S.D.N.Y. 2017) (citing *Newsom-Lang v. Warren Int'l*, 129 F.Supp.2d 662,

664–65 (S.D.N.Y. 2001) (stating the same with respect to Title VII's size requirement)). And

Plaintiff's failure to satisfy it requires dismissal. *See Lora*, 2020 WL 3173025, at *3 (dismissing

claim where plaintiff's papers collectively did not give rise even to an inference that the

defendants "me[t] the requisite threshold number employees" required under Title VII);

*Eyeghe v. Thierry*, No. 14-CV-1914, 2014 WL 5242605, at *1 (S.D.N.Y. Oct. 15, 2014)

(dismissing complaint that failed "even in conclusory fashion" to allege that the defendant

"qualifie[d] as an employer").

       Second, Plaintiff does not adequately allege that Fridays Franchisor was either his direct

employer or integrated with such an employer. To start, even liberally construed, Plaintiff does

not allege that any of the four employer-relationship factors apply to Fridays Franchisor. *See*

*Lora*, 2020 WL 3173025, at *4. In fact, he appears to state that one factor—the payment of

wages—favors a different Defendant, TGI Fridays, Inc., as it is the entity listed on his pay stubs

and W-2 forms. (*See* Pl's Franchisor Mem. 4; Pl's Paychecks.) Plaintiff's argument instead

appears to be that TGI Fridays, Inc., and Fridays Franchisor are joint employers under the

"Franchising Joint Employer Act" and NLRB rules regarding franchisors or are otherwise

integrated into a single enterprise. (*See* Pl's Franchisor Mem. 6–7.) To the extent those

authorities are persuasive, the Court notes that "the Second Circuit has not yet considered

whether a franchisor can qualify as a joint employer" and if so, under what circumstances. *See*

*Morana v. Park Hotels & Resorts, Inc*., No. 20-CV-2797, 2022 WL 769327, at *5 (S.D.N.Y.

---

publication, not for the *truth* of the matter asserted therein" (quotation marks omitted)
(alterations adopted) (emphasis in original)).

Mar. 14, 2022) (alteration adopted) (quoting *Cordova v. SCCF, Inc.*, No. 13-CV-5665, 2014 WL 3512838, at *4 (S.D.N.Y. July 16, 2014)).  Courts in this District have instead looked to functional factors similar to the single enterprise test, including whether the franchisor "guided franchisees on how to hire and train employees," "set and enforced [operational] requirements," "exercised control . . . over the work of employees," or "exercised control over their franchises' timekeeping and payroll practices."  *See id.* (quoting *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014)); *see also Ocampo v. 455 Hosp. LLC*, No. 14-CV-9614, 2016 WL 4926204, at *6 (S.D.N.Y. Sept. 15, 2016) (relying on similar factors to determine whether franchisor was a plaintiff's joint employer).[5]  The upshot here is that Plaintiff does not allege that any of these factors favors a finding of liability as to Fridays Franchisor.  Aside from asserting that the entities share the same address and (potentially) the same HR department, Plaintiff does not allege a "commonality of hiring, firing, discipline, pay, insurance, records, [or] supervision," sufficient to support joint employer status.  *See Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y. 2017).  And he likewise does not allege that the two entities are sufficiently "interrelated" to constitute a single enterprise.  Accordingly, his NYSHRL claims against Fridays Franchisor must be dismissed.  *See Ruiz*, 2019 WL 4601847, at *14 (dismissing complaint based on "bare-bones" allegations of joint employer status); *Popat*, 253 F. Supp. 3d at 540 (finding allegations that two entities were "associated" with each other and shared a certain operational

---

[5] Plaintiff appears to reference a 2020 National Labor Relations Board ("NLRB") rulemaking stating that "an entity may be considered a joint employer of a separate employer's employees only if the two share or codetermine the employees' essential terms and conditions of employment, which are exclusively defined as wages, benefits, hours of work, hiring, discharge, discipline, supervision, and direction."  *See* Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11184 (Feb. 26, 2020) (codified at 29 C.F.R. pt. 103).  To the extent this rule is applicable, Plaintiff has failed to allege joint employer status under it for the same reasons stated herein.

"component" insufficient to demonstrate joint- or single-enterprise status); *cf. Brown*, 756 F.3d at 228 (finding allegations sufficient at motion to dismiss stage where plaintiff alleged that parent corporation's approval was required as to all significant actions by subsidiary and that parent exercised control over subsidiary's decision to discharge certain employees).[6]

### C.  Individual Defendants' Motion

Individual Defendants argue Plaintiff fails to plausibly state a (1) discrimination, (2) hostile environment, (3) retaliation, or (4) constructive discharge claim.  (*See generally* Indiv. Defs' Mem.)  And they argue (5) that any claims against Bogle should be dismissed.  (*Id.*)[7] Because there is no individual liability under the ADEA, the Court addresses only whether Plaintiff states a claim as to any of the Individual Defendants under the NYSHRL.  *See Wang v. Palmisano*, 157 F. Supp. 3d 306, 338 (S.D.N.Y. 2016) ("[C]ourts in the Second Circuit have consistently held that the ADEA does not impose liability on individuals." (collecting cases)); *see also Mallison v. Conn. Off. of Early Childhood*, 634 F. Supp. 3d 21, 40 n.8 (D. Conn. 2022) ("[T]he ADEA precludes individual liability.")  The Court considers each issue in turn.

### 1.  Discrimination

"To state a prima facie claim for employment discrimination under . . . New York law, a plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for the position in question; (3) that defendants took an adverse employment action against him; and

---

[6] Because the FAC fails to state a claim on its face, the Court need not consider Fridays Franchisor's extra-pleading evidence.  (*See* Rote Declaration.)

[7] Plaintiff claims Defendants waived their arguments by failing to raise them in a response to his EEOC charge.  (*See* Pl's Indiv. Opp. 33 (referencing ECF pagination).)  The Court is aware of no caselaw stating that a failure to respond to an EEOC charge results in waiver of arguments in a later motion to dismiss.  *Cf. Williams v. Michigan City Police Dep't*, No. , 1993 WL 592725, at *1 (N.D. Ind. Jul 6, 1993) (in ruling on a summary judgment motion, finding that a defendant's failure to respond to an EEOC charge did not constitute an admission of plaintiff's claim).

(4) that the circumstances support an inference of discrimination on the basis of his membership in a protected class." *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2019 WL 3202747, at *5 (S.D.N.Y. July 16, 2019); *Williams v. N.Y.C. Transit Auth.*, No. 10-CV-882, 2014 WL 11474810, at *2 (E.D.N.Y. Sept. 16, 2014) (same), *aff'd*, 620 F. App'x 63 (2d Cir. 2015). "To satisfy the fourth requirement[,] 'an inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in [ageist] terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Valdez v. Enlarged City Sch. Dist. of Middletown*, No. 21-CV-9261, 2023 WL 2665561, at *4 (S.D.N.Y. Mar. 28, 2023) (alteration adopted) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)).

Employment discrimination claims "need not contain specific facts establishing a prima facie case of discrimination" to survive a motion to dismiss. *Friederick v. Passfeed, Inc.*, No. 21-CV-2066, 2022 WL 992798, at *5 (S.D.N.Y. Mar. 31, 2022) (quotation marks and citation omitted); *see also Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (same). "Rather, an employment discrimination complaint 'must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Valdez*, 2023 WL 2665561, at *4 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). The Second Circuit has explained that "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. "The facts required . . . to be alleged in the complaint need

not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather the alleged facts "need only give plausible support to a minimal inference of discriminatory motivation." *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against [him or] her at least in part for a discriminatory reason, and [he or] she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."). Courts making the plausibility determination "must be mindful of the 'elusive' nature of intentional discrimination," and the concomitant frequency by which plaintiffs must "rely on 'bits and pieces' of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination." *Vega*, 803 F.3d at 86 (citation and italics omitted).

Importantly, "stray remarks alone do not support a discrimination suit." *Ahmad*, 2019 WL 3202747, at *5 (alteration adopted) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)). In determining whether a remark is probative of discrimination, courts consider: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). Offensive, but isolated, remarks "by non-decision makers" have thus generally been held insufficient to raise a plausible inference of discrimination at the pleading stage. *See Brown v. Cnty. of Erie*, No. 12-CV-251, 2013 WL 885993, at *7 (W.D.N.Y. Mar. 8, 2013); *see also Luka v. Bard Coll.*, 263

F. Supp. 3d 478, 487 (S.D.N.Y. 2017) ("Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent.").

Individual Defendants do not contest whether Plaintiff has adequately alleged membership in a protected class.  (Indiv. Defs' Mem. 8.)  And they also accept, for the purposes of this Motion, that Plaintiff's "lay-off[s]," his "being sent home from his shifts early," and his "removal from the work schedule" may constitute adverse employment actions.  (*See id*.)  *See also Petyan v. New York City L. Dep't*, No. 14-CV-1434, 2015 WL 1855961, at *10 (S.D.N.Y. Apr. 23, 2015) (stating that a schedule change may be adverse where it results in a reduction in wages or job responsibilities), *report and recommendation adopted*, 2015 WL 4104841 (S.D.N.Y. July 2, 2015).

Instead, they stridently argue that Plaintiff has failed to allege an inference of discrimination.  (*See* Indiv. Defs' Mem.8–10.)  Yet in doing so, Defendants entirely overlook express references to Plaintiff's age in connection with the alleged adverse acts.  First, Plaintiff alleges that, in the course of "berat[ing]" him, Alvarez-Tudares stated "I had second thoughts about hiring you because of how old you are, but I wanted to give you a chance."  (FAC ¶ 11.)[8] Within days, Alvarez-Tudares allegedly took adverse action by freezing Plaintiff out from Plaintiff's scheduled shifts, and, ultimately, laid him off.  (*See also id*. ¶¶ 11–13 (indicating these events occurred between late May and June 7, 2022.)  Second, Plaintiff recounts seven instances where Mejia cut Plaintiff's shift short and told him to step aside for a younger employee.  (*Id*. ¶¶ 19, 22.)  In Mejia's case, the adverse act followed immediately.  These instances involve direct references to Plaintiff's age.  And they related both to the alleged adverse acts—

---

[8] Plaintiff expressly raises these statements in an additional memorandum of law attached as an exhibit to the end of his Opposition.  (*See* Pl's Indiv. Mem. 37 (referencing ECF pagination).)

termination in Alvarez-Tudares's case and scheduling changes in Mejia's case. Drawing all inferences in Plaintiff's favor, it does not take a large leap to imagine that what Defendants were really getting at with these statements was: "you're too old for this."

Defendants urge, with no degree of specificity, that all of Plaintiff's discrimination claims fail under the "stray remarks" doctrine. (Defs' Reply 6–8.) But these are precisely the sort of statements that give rise to an inference of discrimination under the relevant factors. While there may be questions as to the statements' precise meaning, a reasonable juror could view them as at suggestive of, if not compelling, proof of age-related bias.[9] Both groups of statements were made by supervisory individuals who "undisputedly had input into Plaintiff's [schedule and] termination," even if they were not the ultimate decisionmakers. *See George v. Pro. Disbosables Int'l, Inc*., No. 15-CV-3385, 2017 WL 4574806, at *2 n.4 (S.D.N.Y. Oct. 12, 2017). The statements came in close temporal proximity to alleged adverse acts. And they appear to bear some relationship *to* those adverse acts, insofar as Defendants believed Plaintiff was not cut out for his full shift. *See Henry*, 616 F.3d at 149. Accordingly, Plaintiff has plausibly alleged an inference of discrimination with respect to both his first and second terms of employment. *See Rose v. New York City Bd. of Educ*., 257 F.3d 156, 162 (2d Cir. 2001) (holding that alleged

---

[9] Although not discussed in depth by the Parties, the Court notes that the FAC on its face raises a non-discriminatory justification for many of the challenged acts—namely, that business was slow. (*See, e.g*., FAC ¶ 15.). Typically, that sort of allegation tends to "undermine[] any potential inference that he was terminated based on his [protected traits]." *Ahmad*, 2019 WL 3202747, at *6 (collecting cases). However, Plaintiff makes several non-conclusory allegations that this slow-business justification was pretextual, including that business was not, in fact, slow, (FAC ¶¶ 21, 24), that other dish washers were permitted to work after Plaintiff was dismissed, and that he worked full shifts on days when neither Alvarez-Tudares nor Mejia were his supervisor, (*id*. ¶ 23). *See Callahan v. HSBC Sec. (USA) Inc.*, --- F. Supp. 3d ---, 2024 WL 1157075, at *5 (S.D.N.Y. Mar. 18, 2024) (stating such "indications of pretext" support a plausible inference of causation).

statements "made directly to [the plaintiff] on more than one occasion by her immediate

supervisor, who had enormous influence in the decision-making process" were "direct evidence

of discriminatory animus"); *see also Yan v. Ziba Mode Inc*., No. 15-CV-47, 2016 WL 1276456,

at *4 (S.D.N.Y. Mar. 29, 2016) (noting that "verbal comments may evince discriminatory

motivation when a plaintiff shows that a nexus exists between the allegedly discriminatory

statements and a defendant's decision to discharge the plaintiff" (internal quotation marks and

citation omitted); *Back v. Hastings On Hudson Union Free Sch. Dist*., 365 F.3d 107, 124 n.12

(2d Cir. 2004) (holding comments were not mere "stray remarks" where they "drew a direct link

between gender stereotypes and the conclusion that [the plaintiff] should not be tenured," and

"were made by supervisors who played a substantial role in the decision to terminate").[10]  This is

not to say that Plaintiff's allegations are impenetrable—they clearly have limitations.  But

Defendants simply have *no* response to these other than to assert that they do not exist.

    2.  Hostile Environment

    The Court next turns to Plaintiff's hostile environment claim.

    "Historically, a hostile work environment claim under the NYSHRL required 'a showing

[1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment, and [2] that a specific basis exists for

---

[10] In contrast to these comments, the Court agrees with Defendants that Plaintiff's allegations about similarly situated workers lack probative value.  Among the several references to "younger" workers who were given more favorable treatment, (*see* FAC ¶ 22; Pl's Indiv. Mem. 5–6), Plaintiff never specifies how old they actually where.  And, "[a]bsent any indication of the younger individual's age, any inference of discrimination on the basis of this allegation would be purely speculative."  *See Ahmad*, 2019 WL 3202747, at *7 (quoting *Shlafer v. Wackenhut Corp*., 837 F. Supp. 2d 20, 26 (D. Conn. 2011)); *Williams v. Victoria's Secret*, No. 15-CV-4715, 2017 WL 384787, at *10 (S.D.N.Y. Jan. 27, 2017) (dismissing claim because the plaintiff's "bare assertion that he was replaced by a younger person is insufficient to create an inference of discriminatory intent"), *report and recommendation adopted*, 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017).

imputing the objectionable conduct to the employer.'" *Johnson v. Stop & Shop Supermarket Co., LLC*, No. 22-CV-9691, 2024 WL 1217074, at *13 (S.D.N.Y. Mar. 21, 2024) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted)). A 2019 amendment to the NYSHRL "eliminate[d] the 'severe or pervasive' requirement in favor of a more lenient standard of liability." *Mayorga v. Greenberg*, No. 22-CV-387, 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023); *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (explaining that "the NYSHRL was amended to direct courts to construe the NYSHRL . . . 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed' " (alteration in original) (quoting N.Y. Exec. Law § 300)).

In light of this amendment, plaintiffs "need to show only that they were subjected to inferior terms, conditions, or privileges of employment because of [their] membership in one or more protected categories." *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021); *accord Mayorga*, 2023 WL 6307994, at *8. "[I]t is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (alterations omitted) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *accord Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 465 (S.D.N.Y. 2023). In addition, even under the more liberal pleading standard, the NYSHRL "is still not a general civility code, and petty slights and trivial inconveniences are not actionable." *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877, 2021 WL 396700, at *8 (S.D.N.Y. Feb. 4,

2021) (quoting *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) (internal quotation marks omitted)).

The outcome here mirrors the outcome of Plaintiff's discrimination claims.  As stated, Plaintiff's allegations suggest that Alvarez-Tudares and Mejia removed Plaintiff from the shift schedule and ultimately worked to terminated him under circumstances giving rise to an inference of discrimination.  (*See supra* Section II.C.1.)  To be sure, Defendants' statements could be "petty" when viewed in isolation, (*see* Defs' Mem. 13–14), but comments are not the only things that factor into the hostile environment analysis.  Indeed, Defendants appear to be holding onto a view of NYSHRL hostile environment claims that is out of step with the new, lenient standard.  Under that standard, "the action's shorthand[] name is somewhat of a misnomer" as a plaintiff need not plead comments that are outright "hostile" to state a claim. *Verne v. New York City Dep't of Educ.*, 697 F. Supp. 3d 30, 61 (S.D.N.Y. 2023) (discussing the analogous NYCHRL standard); *see also Espinoza v. CGJC Holdings LLC*, No. 23-CV-9133, 2024 WL 3520662, at *5 (S.D.N.Y. July 23, 2024) ("The standard of [hostile environment] liability under the NYSHRL will thus be treated as akin to the standard under the NYCHRL."). Instead, it is enough that an employee was treated "less well" than others in some sense, because of a protected characteristic.  *Id*. (quotation marks and citations omitted).  Courts applying the new approach have thus held that the *conditions* an employee faces matter, too.  *Santiago v. ACACIA Network, Inc*., 634 F. Supp. 3d 143, 155–56 (S.D.N.Y. 2022) (allegations that black plaintiff was paid less and received fewer opportunities for promotion than her non-black comparators sufficed to plausibly allege she was treated less well due, in part, to her race); *see also Moore v. Hadestown Broadway Ltd. Liab. Co*., --- F. Supp. 3d ---, 2024 WL 989843, at *12 (S.D.N.Y. Mar. 7, 2024) (holding discriminatory termination itself supported hostile

environment claim).  When considering Defendants' statements, in addition to their adverse

conduct, the Court cannot say that the combination is so "insubstantial," *see Maiurano v. Cantor*

*Fitzgerald Sec.*, No. 19-CV-10042, 2021 WL 76410, at *8 (S.D.N.Y. Jan. 8, 2021), that it did not

in some way alter the "conditions" of Plaintiff's employment, *see Tortorici*, 2021 WL 4177209,

at *12–13.  Far from a mere "inconvenience," Plaintiff alleges he was repeatedly told he had to

*leave work* in part because of his age.[11]  The Court's "prior conclusion that a reasonable

factfinder could conclude that [Plaintiff] was discriminated against on the basis of age" therefore

"militates [in favor of] a finding that [Plaintiff] was treated less well on the same basis."  *Verne*,

697 F. Supp. 3d at 61 (internal quotation marks omitted); *see also Moore*, 2024 WL 989843, at

*12 (concluding that, although the complaint did not satisfy Title VII's severe and pervasive

standard, it adequately alleged a NYSHRL hostile environment for the same reason the plaintiff

adequately plead a "disparate treatment theory" of liability). Accordingly Individual Defendants'

Motion is denied as to Plaintiff's hostile environment claim.

### 3.  Retaliation

Turning to Plaintiff's retaliation claim, "[t]he NYSHRL . . . makes it unlawful for an

employer to retaliate or discriminate against an employee because he 'has opposed any practices

forbidden under this article or because . . . he has filed a complaint, testified, or assisted in any

proceeding under this article.'"  *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-

3746, 2022 WL 4485298, at *14 (S.D.N.Y. Sept. 27, 2022) (alterations omitted) (quoting

*Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020)); *accord* N.Y.

Exec. Law § 296(7).  Retaliation claims brought under the NYSHRL are analyzed under the

---

[11] As discussed above, Defendants are wrong to assert that there are no allegations of discriminatory animus.  (*See* Defs' Reply 7–8.)  And Plaintiff at least provides a basis to infer that Mejia, in addition to Alvarez-Tudares, was "aware of his age," (*see id.*), based on the numerous allegations of age-related references.

same framework as retaliation claims brought pursuant to Title VII.  *See Kirkland-Hudson*, 665

F. Supp. 3d at 459 (noting that retaliation claims under the NYSHRL are "subject to the same

standard" as such claims in the Title VII context).  Thus, to state a prima facie case for

retaliation, a plaintiff must demonstrate: "(1) participation in a protected activity; (2) that the

defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal

connection between the protected activity and the adverse employment action."

*Goonewardena v. N.Y. Workers Comp. Bd*., 258 F. Supp. 3d 326, 344 (S.D.N.Y. 2017) (citation

omitted).

With respect to the first element, a plaintiff engages in "protected activity" when he

either "'opposes any practice made unlawful by Title VII,' or 'makes a charge, testifies, assists,

or participates in any manner in an investigation, proceeding, or hearing under Title VII [or the

NYSHRL].'"  *See Vaughn v. Empire City Casino at Yonkers Raceway*, No. 14-CV-10297, 2017

WL 3017503, at *20 (S.D.N.Y. July 14, 2017) (alterations adopted) (quoting *Littlejohn*, 795 F.3d

at 316).  A plaintiff's complaint qualifies as protected activity so long as the plaintiff had "a good

faith, reasonable belief that she was opposing an employment practice made unlawful by Title

VII."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C*., 716 F.3d 10, 14 (2d Cir.

2013) (alteration and internal quotation marks omitted).

Defendants argue that Plaintiff has failed to plead a protected activity or that Defendants

took adverse action because of any such complaints.  (Defs' Mem. 10–11.)  The relevant

allegations deal with two calls to HR:  (1) in June or July 2022, when Plaintiff called to complain

about what he "felt was an un-just lay-off" and explained "in full detail what had happened"; and

(2) in September 2022, when he called after being told to leave work early.  (*See* FAC ¶¶ 16–17.)

These bare-bones allegations, even liberally construed, do not permit a reasonable inference that

*what* Plaintiff complained about was discrimination on the basis of age. *Pompey-Primus v. Success Acad. Charter Sch., Inc.*, No. 21-CV-3981, 2022 WL 504541, at *9 (S.D.N.Y. Feb. 17, 2022) (dismissing complaint where plaintiff did not allege that she either opposed sex discrimination or participated in an investigation into any such discrimination); *see Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 582 (2d Cir. 2020) (summary order) (affirming dismissal of retaliation claim where plaintiff did not allege "that she in any way — formally or informally — complained of or opposed" the defendant's allegedly discriminatory practice); *see also Karupaiyan* v. *CVS Health Corp.*, No. 19-CV-8814, 2021 WL 4341132, at *27 (S.D.N.Y. Sept. 23, 2021) (finding plaintiff did not engage in protected activity where he did not "allege that he actually lodged a complaint with his employer about what he perceived to be illegal discrimination on the basis of a protected category"). Plaintiff also provides no facts tying the calls to any adverse actions on the basis of knowledge, temporal proximity, or anything else. *See Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*, No. 16-CV-4897, 2017 WL 2258374, at *11 (S.D.N.Y. May 22, 2017) (dismissing retaliation claim because "the plaintiff does not tie the [adverse employment action] to the reporting of any act of discrimination or harassment"), *report and recommendation adopted*, 2017 WL 2709747 (S.D.N.Y. June 22, 2017); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *19 (S.D.N.Y. July 9, 2013) (dismissing retaliation claim because the complaint "alleges no facts to suggest that [the plaintiff's] activities, protected or not, motivated [the defendant's] decision not to promote or terminate her"), *report and recommendation adopted as modified by* 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013). Accordingly, Plaintiff's retaliation claim is dismissed.

### 4. Constructive Discharge

The Court also dismisses Plaintiff's claim of constructive discharge. (*See* FAC ¶ 44.) To state such a claim, Plaintiff "must establish that (1) 'he was discriminated against by his

employer to the point where a reasonable person in his position would have felt compelled to resign,' and (2) 'he actually resigned.'" *Monroe v. Cnty. of Orange*, No. 14-CV-1957, 2016 WL 5394745, at *18 (S.D.N.Y. Sept. 27, 2016) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)); *see also Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003) ("An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."). Here, Plaintiff did not "actually resign[]." *See Monroe*, 2016 WL 5394745, at *18. Instead, his claim is that he was terminated despite his avid attempts to report to work. (*See, e.g.*, FAC ¶ 26.) This claim is therefore dismissed.

### 5. Defendant Bogle

Individual Defendants also argue that Plaintiff failed to plead any facts that Defendant Bogle violated the law. (Indiv. Defs' Mem. 17–18.)

A plaintiff's task at the pleading stage is to provide "factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169, 2024 WL 1076683, at *4 (S.D.N.Y. Mar. 11, 2024) (quoting *Iqbal*, 556 U.S. at 678) (alteration adopted); *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (same). Accordingly, "[a] complaint that fails to allege how a specific defendant violated the law or injured the plaintiff should be dismissed as to that defendant." *Roberts v. City of New York*, No. 14-CV-5198, 2016 WL 4146135, at *7 (S.D.N.Y. Aug. 2, 2016) (citation omitted); *see also Latimer v. Annucci*, No. 21-CV-1275, 2022 WL 1137055, at *3 (S.D.N.Y. Apr. 18, 2022) ("[W]hen 'the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'"

(quoting *Perkins v. City of New York*, No. 14-CV-3779, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017))).

Plaintiff here fails to implicate Bogle in any of the claims discussed above. The only substantive allegation the Court can find in the FAC is that Mejia claimed Bogle was the one who ordered a reduction in Plaintiff's shift schedule. (FAC ¶ 19.) Plaintiff adds in opposition that he "had no direct contact with [Bogle]" and again notes that the only time he heard about Bogle was when Mejia "stated to [Plaintiff]" that Bogle directed a change in his hours. (*See* Pl's Indiv. Mem. 4.) Even drawing every reasonable inference in Plaintiff's favor, these allegations fail to establish Bogle's involvement in any of the discriminatory conduct discussed above. And they likewise are insufficient to establish his knowledge or ratification of the same. Indeed, Plaintiff appears to argue that Mejia's references to Bogle were a pretext for his discriminatory acts. (*See id*.) Plaintiff's claims against Bogle are therefore dismissed. *Al-Haj v. Akuamoah*, No. 19-CV-6072, 2021 WL 964211, at *5 (S.D.N.Y. Mar. 15, 2021) (explaining that "dismissal of the complaint is appropriate" where "the complaint contains no substantive allegation against the defendant"); *Reynolds v. Barrett*, 741 F. Supp. 2d 416, 442 (W.D.N.Y. 2010) (dismissing claims as to defendant who "had some at most tangential connection with the events giving rise to [the plaintiff's] claims"), *aff'd*, 685 F.3d 193 (2d Cir. 2012).[12]

---

[12] At the very end of his submission, Plaintiff states that Defendants should be "hit with Rule 11 sanctions" for "wasting his time and that of the Court." (*See* Pl's Indiv. Mem. 45 (referencing ECF pagination).) Plaintiff admits, however, that he did not formally "request" sanctions insofar as he did not formally move under Federal Rule of Civil Procedure 11 or serve Defendants with the notice contemplated by Rule 11(c)(2). *See Fink v. Mohonk Pres. Inc*., No. 20-CV-3002, 2020 WL 6110846, at *1 (S.D.N.Y. Sept. 14, 2020) (explaining that a sanctions movant must first "serve a demand on opposing counsel seeking the immediate withdrawal of the offending pleading"). In any event, Defendants' Motion is hardly "baseless," (*see* Pl's Indiv. Mem. 45), as it presented multiple meritorious arguments.

### III.  Conclusion

For the foregoing reasons, Fridays Franchisor's Motion is granted and the Individual

Defendants' Motion is granted in part and denied in part.  Specifically, Plaintiff's NYSHRL

discrimination and hostile environment claims survive and all other claims are dismissed.

Because this is the first adjudication of Plaintiff's claims on the merits, dismissal of

Plaintiff's claims is without prejudice.  To the extent Plaintiff has a good faith basis for filing an

amended complaint, he must do so within 30 days of the date of this Opinion & Order.[13]  The

amended complaint will replace, not supplement, the complaint currently before the Court.

Failure to properly and timely amend will result in dismissal of any non-surviving claims with

prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (Dkt.

Nos. 22, 33.)


SO ORDERED.

Dated:    September 26, 2024
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

---

[13] Fridays Franchisor contends that amendment is futile because it did not hire or fire
Plaintiff or pay him.  (Fridays Franchisor Mot. 10 n.6.)  Even if the Court were to accept these
facts—which do not appear in documents that are appropriate to consider under Rule 12(b)(6)—
Fridays Franchisor does not consider a scenario in which Plaintiff pleads facts giving rise to
single enterprise status.